UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DeLAY & VICKI DeLAY,

               Plaintiffs,                     Civil Action No. 12-11134

        v.                             District Judge Sean F. Cox
                                      Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

## REPORT AND RECOMMENDATION
## TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [7]

Plaintiffs John and Vicki DeLay bring this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying Plaintiff John DeLay's application for disability and Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiffs did not file a motion for summary judgment. Defendant filed a summary judgment motion, which is presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkts. 2, 7.) For the reasons set forth below, this Court finds that substantial evidence supports the Administrative Law Judge's decision. Accordingly, this Court RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.[1]

_____

[1] While Plaintiffs failed to file a motion for summary judgment, the Court has nevertheless conducted a substantial evidence analysis and has determined that there are no obvious errors in the record. The decision to deny Plaintiff John DeLay's claim for benefits is one that a reasonable person could have made based on this record, and under those circumstances, the Court recommends affirming the Commissioner's decision.

## I. BACKGROUND

Plaintiff was thirty-seven years old at the time of his alleged onset date.  (Tr. 25-26.)  He has a high school education.  (Tr. 25.)  He held various positions in a factory working on different machines.  (Tr. 124.)  Plaintiff claims that he is unable to work anymore because of on-going issues associated with an ankle injury,  he suffers from lung problems and seizures, and  he has issues with memory.  (Tr. 115, 118, 119-20, 123.)

### A.  Procedural History

On March 5, 2009, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging that he became disabled on February 18, 2000.  (Tr. 172-175.)  The Commissioner initially denied Plaintiff's application on June 17, 2009.  (Tr. 150-154.)  Thereafter, Plaintiff filed a request for a hearing, and on August 10, 2011, Administrative Law Judge ("ALJ") Brenton L. Rogozen held a video hearing and considered the case *de novo*.  (Tr. 103-131.)  Dr. Philip Sidney Bentlif, M.D., an impartial medical expert, and Stephanee A. Leech, an impartial vocational expert, also appeared and testified at the hearing.  (*Id.*)  ALJ Rogozen also presided at a second hearing held on January 25, 2011, where additional testimony was taken and evidence received into the record.  (Tr. 132-148.)  Also present at the second hearing were Dr. Robert Chevalier, M.D., medical expert, and Judy Findora, vocational expert, although, Ms. Findora knew Plaintiff and therefore did not testify.  (Tr. 134.)  Plaintiff was represented at both hearings by counsel.  In an August 19, 2011 decision, the ALJ found that Plaintiff was not disabled.  (Tr. 8-18.)  The ALJ's decision became the final decision of the Commissioner on January 13, 2012, when the Appeals Council denied Plaintiff's request for review.  (Tr. 1-4.)  Plaintiff filed this *pro se* suit on March 14, 2012.

2

**B.  Medical Evidence**

According to Plaintiff, he sustained a head injury in 1983 when he was involved in a motor vehicle accident.  (Tr. 14.)  He sustained a subsequent fall on February 18, 2000, and underwent surgery on his left ankle, and had an ingrown toenail on his right great toe removed.  (Tr. 266.)  Following the surgery, Plaintiff continued to experience pain and swelling in his left ankle.  (Tr. 268-69.)  In April 2001, Plaintiff underwent another surgery on his lower leg.  (Tr. 305.)  By August 2001, after attending physical therapy, Plaintiff's physician, Dr. Susan Mosier-LaClair, reported dramatic progress with regard to his pain, swelling, and range of motion in his ankle.  (Tr. 296-97.)  Dr. Mosier-LaClair also reported that Plaintiff was able to bear full weight on his ankle at this time.  (*Id*.)  In January 2002, Plaintiff underwent another surgery to remove the screws in his left ankle as well as to remove ingrown toenails from his great toes.  (Tr. 290.)  In April 2002, Plaintiff's surgical wound split open and he was told that it would take approximately two to three months for his left ankle to heal.  (Tr. 287.)  Plaintiff could not work during this period.  (*Id*.)  In September 2002, Plaintiff returned to work at Goodwill without significant difficulty.  Plaintiff also reported that he was able to perform his regular activities.  (Tr. 285.)

In August 2004, Plaintiff again sought treatment for his left ankle, his physician noting hypersensitivity in that area.  Plaintiff, however,  had only minimal pain in his range of motion, though his range of motion remained limited.  (Tr. 283-84.)  At this same time, Dr. Mosier-LaClair diagnosed Plaintiff with: 1) over three years status post left open reduction and internal fixation, distal tibiofibular joint dislocation with repair syndesmotic ligament and excision of heterotopic ossification; 2) recurrent heterotopic ossification secondary to closed head injury; 3) postoperative wound dehiscence, status post reconstructive surgery now healed; and 4) bilateral ingrown toenails

3

of the great toes.  (*Id.*)  Two years later, in June 2006, an EEG was performed and the examining neurologist reported: "[t]his is probably an abnormal electroencephalogram due to presence of left temporal slowing without clear epileptiform discharges."  (Tr. 279.)  Plaintiff continued to take Dilantin for his seizure disorder.  (Tr. 117.)

The record contains notes from Plaintiff's treating physicians — Dr. Sydney Martin, M.D., and Dr. Susan Mosier-LaClair, M.D. — both of whom concluded that Plaintiff was capable of returning to work in some capacity during the relevant time period.  (*See, e.g.*, Tr. 272, 273, 274, 284, 292, 294, 300.)

### C. Testimony at the Hearing Before the ALJ

Two hearings were held before the ALJ.  The first hearing was held on August 10, 2011.  (Tr. 103-31.)  The second hearing was held on January 25, 2011.  (Tr. 132-47.)  The Court has reviewed the transcripts from both hearings.

#### 1. *Plaintiff's Testimony*

Plaintiff testified that he had an accident at work in February 2000 where he slipped and broke his ankle.  (Tr. 115.)  Since Plaintiff's accident, he has had several surgeries on his ankle and has testified to on-going soreness, pressure, and pain.  (*Id.*)  Plaintiff reported that he would only be able to walk a block before needing to sit down and would only be able to stand seven-to-ten minutes before needing to sit down.  (Tr. 116.)  Plaintiff testified that it is difficult to climb stairs and that he takes Dilantin for his pain.  (Tr. 116-17.)

Plaintiff also testified to having petit mal seizures.  (Tr. 118.)  Plaintiff indicated that he would experience a petit mal seizure once every two weeks.  (Tr. 119.)

Plaintiff also reported lung problems, including experiencing a case of pneumonia in 2008.

4

(Tr. 119-20.)  Plaintiff has been prescribed oxygen, inhalers, and antibiotics to assist with his lung and breathing issues.  (Tr. 119.)   He indicated that his wife does most of the driving and that he typically just sits around the house watching a lot of television.  (Tr. 121-22.)

### 2. *Vocational Expert's Testimony*

The vocational expert ("VE") testified that a hypothetical individual of Plaintiff's age, education, and work experience who was limited to Plaintiff's RFC (*see* page 7, *infra*) would be able to perform work including, assembly positions, unskilled office clerk positions, reception and information clerk positions, packer positions, and inspector positions.  (Tr. 127-28.)  Plaintiff's attorney asked whether a 15-20% reduction in Plaintiff's ability to work with pace, persistence and concentration would affect Plaintiff's ability to compete in the job market.  The VE responded that such a reduction would make Plaintiff non-competitive.  (Tr. 129.)   Because of repeated lung infections, Plaintiff's attorney then asked how missing more than one unscheduled day per month would affect Plaintiff's ability to maintain unskilled employment.  The VE responded that an employer would not allow in excess of one unexcused absence per month.  (*Id.*) Plaintiff's attorney then asked what effect would a significant diminution in Plaintiff's ability to process information so that he was two standard deviations outside of the normal range have on  Plaintiff's ability to maintain unskilled employment.  The VE responded that it would reduce it.  (*Id.*)

### 3. *Medical Expert Testimony*

Medical expert Dr. Robert Chevalier testified at the first hearing that, through Plaintiff's date last insured, Plaintiff's severe impairments were joint problems due to fracture of the left ankle and seizure disorder.  (Tr. 10.)  Dr. Chevalier also opined that Plaintiff's impairments would not meet or equal a listing.  (Tr. 141.)  Medical expert Dr. Philip Bentlif testified at the second hearing that

Plaintiff's impairments through the date last insured were a fractured ankle and seizures.  (Tr. 10.)

Dr. Bentlif further testified that Plaintiff's impairments did not meet or equal a listing.  (Tr. 110.)

## II.  THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

6

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of February 18, 2000, through his last date insured of June 30, 2007. (Tr. 10.) At step two, the ALJ found that Plaintiff had the following severe impairments: status post closed head injury, seizure disorder, status post left ankle fracture, and ingrown toenails. (*Id.*) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (*Id.*) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform: "sedentary work as defined in 20 C.F.R. 404.1567(a) except the claimant is unable to climb ropes or ladders. The claimant is unable to work around dangerous machinery or sharp objects, and is limited to occasional balancing. The claimant is able to sit for six hours and stand and walk for two hours during an eight-hour workday." (Tr. 13.) At step four, the ALJ found that Plaintiff was not capable of performing his past relevant work. (Tr. 17.) At step five, the ALJ determined that, considering the Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. (Tr. 17-18.) As a result, the ALJ determined that Plaintiff was not under a disability as defined by the Act at any time from February 18, 2000, the alleged onset date, through June 30, 2007, the date last insured. (Tr. 18.)

## III. STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole.  *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir.

2001).  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).   Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV.  ANALYSIS

Plaintiff fails to make specific arguments challenging the ALJ's decision.  Defendant argues that "substantial evidence supports the ALJ's finding that Plaintiff was not disabled." (Dkt. 7, Def.'s Mot. Summ. J. at 9-14.)

The ALJ's written decision reveals that he properly applied the above-detailed five step analysis and supported his findings at each step with "relevant evidence [that] a reasonable mind might accept as adequate to support" his conclusions. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

Specifically, with regard to step three, the ALJ considered the correct medical listings and reasonably determined that Plaintiff's status post closed head injury, seizure disorder, status post left ankle fracture, and ingrown toenails did not meet or medically equal the requirements of the listings. (Tr. 10.)

In addition, the ALJ carefully considered the entire record in determining Plaintiff's RFC. (Tr. 12-13.)  The ALJ found significant, and so does this Court, the objective medical evidence that Plaintiff's condition had stabilized to a point where his treating physicians – Dr. Mosier-LaClair and Dr. Martin – reported that he could return to work. (*See, e.g.*, Tr. 272, 273, 274, 284, 292, 294, 300.)

Last, the ALJ properly relied on the testimony of a vocational expert in determining that there were jobs that existed in significant numbers in the national economy that Plaintiff could

perform.  (Tr. 17.)  *Varley v. Sec'y of Health & Human Servs*, 820 F.2d 777, 779 (6th Cir. 1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question . . .  if the question accurately portrays [the] plaintiff's individual physical and mental impairments." (internal citations omitted)); *see also Webb v. Comm'r of Soc. Sec*., 368 F.3d 629, 632 (6th Cir. 2004).  As stated, the ALJ's RFC assessment was supported by substantial evidence.  Therefore, the ALJ could reasonably rely on the VE's response to his hypothetical questions.  Accordingly, the ALJ's ultimate finding of "not disabled" is supported by substantial evidence.

## V.  CONCLUSION & RECOMMENDATION

For the reasons set forth above, this Court finds that substantial evidence supports the ALJ's decision.  Accordingly, this Court RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## VI. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case

10

Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).


s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated: January 30, 2013


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 30, 2013.


s/Jane Johnson
Deputy Clerk